IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| Christa Hinds,<br>*Individually and on behalf of all others similarly situated*<br><br>                Plaintiff,<br><br>   v.<br><br>MJ Lucky Dog I, LLC<br><br>and<br><br>MJ Lucky Dog II, LLC<br><br>and<br><br>MaryAnn Dempsey,<br><br>                Defendants. | Case No.<br><br>JUDGE:<br>MAGISTRATE JUDGE:<br><br><br>FLSA Collective Action<br><br>THE FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201-219, C.F.R. § 531.35);<br><br>FRCP 23 Class Action (State-Law Claim)<br><br>Article II, §34a of the Ohio Constitution<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Now comes Plaintiff, Christa Hinds ("Plaintiff"), on behalf of herself and all other persons similarly situated and for her Complaint against Defendants MJ Lucky Dog I, LLC and MJ Lucky Dog II, LLC and MaryAnn Dempsey (collectively "Defendants") states and alleges as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* the Ohio Constitution and the Ohio Minimum Fair Wage Standards Act ("MFWSA"), Oh. Rev. Code Chapter 4111, for Defendants' failure to pay Plaintiff and other similarly-situated employees all earned minimum wages and overtime wages.

2. Defendants own and/or operate two Legends Bar and Grill Restaurants, one in Fairborn, Ohio and one in Clyde, Ohio.

3. As detailed herein, Defendants employed a common policy and practice whereby Plaintiff and the members of the Classes (defined below) were required to regularly work for the benefit of the Defendants while their hours were not being properly paid, classified, or recorded. As explained herein, under applicable employment laws, Plaintiff and the members of the Classes are entitled to the applicable minimum wage for all hours worked and overtime for hours over forty (40) in an individual work week. Defendants' policy of requiring Plaintiff and members of the Classes to attend meetings and respond to text messages while they were off the clock and requiring them to perform non-tipped work unrelated to their tipped occupation and excessive amounts of non-tipped work even if related to their tipped occupation while being paid the sub-minimum tip credit wage rate, violated state and federal wage and hour law.

4. Plaintiff brings this case against the Defendants for violating the Fair Labor Standards Act ("FLSA"), the Ohio Constitution and the MFWSA. Plaintiff brings her FLSA claims as a collective action to seek past-due wages and an equivalent amount in liquidated damages for putative class members who opt in. Plaintiff brings her supplemental Ohio state- law claim to recover remedies not available in her FLSA action.

5. Defendants have a policy or practice of paying their tipped employees at their Legends Bar and Grill restaurants, including bartenders, sub-minimum hourly wages under the tip-credit provisions of the FLSA ("Tip-Credit Employees").

6. Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage

and take a "tip credit" against its minimum wage obligations. But an employer is *not* permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip- credit subsection of the FLSA; (2) when it requires its tipped employees to perform non- tipped work that is *unrelated* to the employees' tipped occupation (i.e., "dual jobs"); (3) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek; or (4) when it requires tipped employees to return a portion of their tips to the employer. *See, e.g.*, 29 U.S.C. § 203(m) (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but non-tipped duties should be paid at the full minimum wage for that time"); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (defendant not permitted to take the FLSA tip credit when it took plaintiffs' tips to pay for shortages and unpaid tabs).

7. Defendants have a policy and practice of failing to inform their Tip-Credit Employees of the tip-credit provisions of the FLSA.

8. Defendants' policy and practice of failing to inform their Tip-Credit Employees of the tip-credit provisions of the FLSA while paying the sub-minimum, tip credit wages violates the FLSA.

9. Defendants have a policy or practice of paying their Tip-Credit Employees sub-minimum, tip-credit wages even when they required those employees to perform non-tipped work that is *unrelated* to their tipped occupation (i.e., "dual jobs").

10. Defendants have a policy or practice of requiring Tip-Credit Employees to perform non-tipped work that, even if *related* to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

11. Defendants have a policy and practice of requiring Tip-Credit Employees to pay from their tips for customer walkouts.

12. Defendants' policy and practice of requiring Tip-Credit Employees to pay from their tips for customer walkouts while paying them sub-minimum, tip-credit wages violates the FLSA.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction over Plaintiffs' FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. §§ 1331.

14. This Court has supplemental jurisdiction over Plaintiffs' Ohio Constitutional and MMWL claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this judicial district because the facts and events giving rise to Plaintiffs' claims occurred in this judicial district. 28 U.S.C. §1391.

## THE PARTIES

16. Defendant MJ Lucky Dog I, LLC is an Ohio Corporation that, upon information and belief, is owned by Defendant MaryAnn Dempsey.

17. Defendant MJ Lucky Dog II, LLS is and Ohio Corporation that, upon information and belief, is owned by Defendant MaryAnn Dempsey.

18. Defendant MaryAnn Dempsey has control over the day-to-day business

operations of the corporate Defendants' restaurants. Among other things, has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on each corporation's checking accounts, including payroll accounts, and the authority to participate in decisions regarding employee compensation and capital expenditures. Dempsey controls the "purse strings" of her Legends Bar and Grill restaurants, including those operated through the corporate Defendants: she has authority to sign the corporate checks without limitation as to amount; provides funds to purchase goods, as well as pays employees; and has authority to sign on the checking accounts from which Plaintiff was paid.

19. Defendants paid Plaintiff at a subminimum tip-credit wage to work as a bartender at Defendants' Legends Bar and Grill restaurant.

20. Plaintiff worked as a bartender at Defendants' Legends Bar and Grill in Fairborn, Ohio from July, 2018 to January 30, 2021.

21. Plaintiff does not recall Defendants informing her of the tip-credit provisions of the FLSA.

22. While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff to spend over 20 percent of her work time in one or more individual workweeks performing required duties where she did not interact with customers and could not earn a tip. Below is a non-exhaustive list of these duties: opening and closing, sweeping, mopping, vacuuming, sanitizing, cleaning bathrooms, cooking and preparing food, portioning food, stocking beer, stocking inventory, paying invoices, checking delivery orders, cleaning the restaurant and dishes, and preparing food.

## COLLECTIVE ACTION ALLEGATIONS

23. While paying Plaintiff sub-minimum, tip-credit wage, Defendants' required

Plaintiff to reimburse the restaurant from her tips when customers walked out without paying for their meals, which they did.

24. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on behalf of herself and all other similarly-situated employees. The other similarly-situated employees are defined as follows:

> All current and former bartenders paid by Defendants at an hourly rate less than the applicable minimum wage in one or more work weeks and who worked at Defendants' Legends Bar and Grill restaurants during the applicable FLSA limitations period up to and including the date of final judgment in this matter.

25. Excluded from this definition are the Defendants, the Court and its staff, and all counsel, as well as immediate family members of the same. Moreover, Plaintiff reserves the right to amend this definition based on discovery or legal developments.

26. Defendants are aware, or should have been aware, that federal law requires them to pay Tip-Credit Employees full minimum wage when they: (1) fail to inform Tip Credit Employees of the tip-credit provisions of the FLSA; (2) require Tip-Credit Employees to perform non-tipped work that is (i) *unrelated* to their tipped occupation, or (ii) even if *related,* exceeds 20 percent of their time worked during individual work weeks; or (3) require Tip-Credit Employees to return a portion of their tips to the restaurants to cover the cost of customer walkouts.

27. Plaintiff is similarly situated to Defendants' other Tip-Credit Employees because those employees were also paid sub-minimum hourly wages while they were subject to Defendants' illegal policy or practice of: (1) failing to inform them of the tip- credit provisions of the FLSA; (2) requiring them to perform non-tipped work that is (i) *unrelated* to their tipped occupation, or (ii) even if *related,* exceeds 20 percent of their time worked during individual work weeks; or (3) requiring Tip-Credit Employees to return a portion of their tips

to the restaurants to cover the cost of customer walkouts.

28. There are numerous similarly-situated current and former Tip-Credit Employees who worked at Defendants' Legends Bar and Grill restaurants in Ohio who would benefit from the Court authorizing issuance of notice of this lawsuit so that these employees may opt in to this action.

29. Similarly-situated Tip-Credit Employees are known to Defendants and are identifiable in Defendants' payroll records.

### OHIO CLASS DEFINITION AND RULE 23 ALLEGATIONS

30. Plaintiffs bring the Claims for Relief for violation of Ohio's Constitution as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiffs bring these claims on behalf of themselves and all members of the following class (the "Ohio Class") comprised of:

> All current and former bartenders paid by Defendants at an hourly rate less than the applicable minimum wage in one or more work weeks and who worked at Defendants' Ohio Legends Bar and Grill restaurants during the applicable limitations period up to and including the date of final judgment in this matter.

31. The potential quantity of members of the proposed Ohio Class, as defined, is so numerous that joinder of all members would be unfeasible and impractical. Plaintiffs are informed and believe that the total number of current and formerly employed members of the Ohio Class exceeds 50. The quantity and identity of such membership is readily ascertainable via inspection of Defendants' employment and payroll records.

32. There are common questions of law and fact as to the members of the Ohio Class which predominate over questions affecting only individual members which include, but are not limited to, the following:

    a. Whether Defendants failed to keep accurate records of all hours worked and wages earned by members of the Ohio Class;

b. Whether Defendants failed to pay members of the Ohio Class the minimum wage in violation of Article II, §34a of the Ohio Constitution and the Ohio MFWSA, Oh. Rev. Code, Chapter 4111.

c. Whether the members of the Ohio Class are entitled to compensatory damages, and if so, the means of measuring such damages;

d. Whether the members of the Ohio Class are entitled to injunctive relief;

e. Whether the members of the Ohio Class are entitled to restitution; and

f. Whether Defendants are liable to members of the Ohio Class for attorneys' fees and costs.

33. The claims of the Plaintiff is typical of the claims of all members of the Ohio Class they seek to represent because all members of the Ohio Class sustained injuries and damages arising out of Defendants' common scheme to maximize profits by skimming wages.

34. Plaintiff is an adequate representative of the proposed Ohio Class she seeks to represent because she will fairly protect the interests of the members of the Ohio Class, she has no interests antagonistic to the members of the Ohio Class, and she will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

35. The nature of this action and the nature of the laws available to members of the Ohio Class make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the following reasons:

a. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

b. This case involves a large number of individual class members with many relatively small claims. If each individual member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage because they would be able to exploit and

    overwhelm the limited resources of each individual class member with their vastly superior financial and legal resources;

c. Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

d. Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendants;

e. Absent class treatment, the prosecution of separate actions by the individual members of the Ohio Class, even if possible, would likely create:

  i. a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

  ii. a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

  iii. inconsistent or varying verdicts or adjudications;

  iv. potentially incompatible standards of conduct for Defendants;

  iv. The claims of the individual members of the Ohio Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

  v. Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

  vi. Judicial precedent urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

36. Finally, adjudicating this action on a class basis is appropriate because liability turns on Defendants' own uniform and systematic scheme to maximize profits by depriving its employees of wages, overtime wages, and forcing them to work off the clock.

Class-wide liability can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles, representative testimony, documentary evidence and Defendants' common policies and practices. Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

37. Defendants paid Plaintiff less than minimum wage to work as bartender. Plaintiff was not informed by Defendants of the tip-credit provisions of the FLSA. Defendants also required Plaintiffs to "reimburse" expenses to the restaurant from tips in violation of the FLSA.

38. While paying them sub-minimum wage, Defendants required Plaintif to spend over twenty percent of her work time in one or more individual workweeks performing *related* non-tipped work, and required them to perform *unrelated* non-tipped duties that had no customer interaction and that did not generate tips.

39. Defendants' requirement that Plaintiff and the putative class portion food while working on tip credit required a substantial amount of time. This task alone often takes more than an hour during a shift.

## COMMON FACTUAL ALLEGATIONS

40. Defendants trained their Legends Bar and Grill employees, including Tip-Credit Employees, to perform the same, or essentially the same, job duties. This identical training is delivered regardless of the location where they are assigned to work.

41. During the Plaintiffs' employment, Defendants permitted bartenders to transfer between their Legends Bar and Grill restaurants.

42. Defendants require their Tip-Credit Employees to perform non-tipped work each shift in addition to serving customers.

43. During the Plaintiff's employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that servers and bartenders were required to perform in addition to serving customers.

44. During the Plaintiff's employment, managers verified that servers and bartenders performed the non-tipped work covered in the checklists.

45. When Plaintiff and other Tip-Credit Employees performed non-tipped work, they did not interact with customers and did not have the opportunity to earn tips.

46. Defendants require Tip-Credit Employees to perform non-tipped work before their restaurants are open to customers.

47. Defendants require Tip-Credit Employees to perform non-tipped work after they are finished serving customers and/or their restaurants are closed to customers.

48. During Plaintiff's employment, Defendants had no policies prohibiting Tip-Credit Employees from performing certain types, or excessive amounts, of non-tipped work.

49. During Plaintiff's employment, Defendants did not record or track the amount of time Tip-Credit Employees spent performing non-tipped work.

50. Defendants did not allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

51. Defendants also routinely clocked Plaintiff and the putative class out and required them to do significant work while clocked out, sometimes in excess of two hours.

**Defendants Violated the FLSA by Requiring Plaintiff and Class Members to Perform Substantial Non-Tip-Producing Tasks Without Being Paid Minimum Wage.**

52. Under the FLSA, as interpreted by the Department of Labor (the "DOL"), employers may not take the tip credit for time the employee is engaged in a non-tipped job and instead must pay their employees at the standard minimum wage. The DOL has formalized this

concept under the "Dual Jobs" regulation which states as follows:

> **Dual jobs**. In some situations, an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee . . . is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. 29 CFR 531.56(e)

53. The Dual Jobs regulation imposes both quantitative and qualitative restrictions on the employer's ability to take the tip credit for non-tip-producing tasks, as explained in the DOL's Field Operations Handbook (the "Handbook" or "FOH"). The quantitative restriction limits the amount of time an employee can spend on tasks related to the tipped occupation. 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses. FOH § 30d00(e)(2) (rev. 668, June 20, 2012).

54. The Handbook continues: [W]here the facts indicate that tipped employees spend a substantial amount of time (in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

55. This "20 percent tolerance," which is one method of determining whether an

employee is effectively engaged in a dual jobs position, is referred to as the "20 Percent Rule." Courts have routinely utilized this quantitative standard.

56. The qualitative aspect of the Dual Jobs regulation prohibits taking the tip credit for work that is "not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations." FOH § 30d00(e)(4).

57. Defendants instituted a policy requiring Plaintiffs and Class Members to work dual jobs that included tipped tasks (directed toward producing tips) and substantial non-tip- producing tasks ("Non-Tipped Work"), exceeding 20 percent of their time, for which they were not paid the applicable minimum wage.

58. Such Non-Tipped Work for servers includes but is not limited to: opening and closing, sweeping, mopping, vacuuming, sanitizing, cleaning bathrooms, cooking and preparing food, portioning food, stocking beer, stocking inventory, paying invoices, checking delivery orders, cleaning the restaurant and dishes, and preparing food.

59. Defendants have a policy and practice of paying Plaintiff and Class Members, sub-minimum, tip-credit wages, even when Defendants require them to perform Non-Tipped Work that is not related to their tipped occupation, such as baking bread and performing other tasks, including but not limited to those previously set forth in this Complaint, not related to their tipped occupation.

60. Even if the Non-Tipped Work Defendants required Plaintiff and Class Members to perform was related to their tipped occupation, Defendants violated the FLSA by its policy and practice of requiring Plaintiffs and Class Members to perform such work for more than 20 percent of their time worked during the workweek.

61. Plaintiffs were required to perform substantial non-tip-producing tasks for

more than 20 percent of their hours in the workweek without being paid a minimum wage.

62. Plaintiffs were also required to perform tasks that were unrelated to and not incidental to their tip-producing occupation without being paid a minimum wage.

63. Defendants' policy and practice of requiring Plaintiffs and Class Members to perform excessive and/or unrelated Non-Tipped Work while paying them sub-minimum, tip-credit wages violates the FLSA.

**Defendants Violate the FLSA by Failing to Pay Plaintiffs and
Class Members for Off-the-Clock Work.**

64. Defendants require Plaintiff and Class Members to perform substantial non-tip-producing work when they are clocked in.

65. Defendants have refused to pay Plaintiff and Class Members minimum wage for non-tip-producing work that exceeds 20 percent of the hours in a workweek.

66. Plaintiff and Class Members worked off the clock without pay, with the knowledge, expectation, and acquiescence of Defendants.

67. Defendants clocked Plaintiff and Class Members out yet required them to remain to complete multiple tasks, including but not limited to mopping bathrooms, wiping sinks and mirrors, detailing the bar, filling salt and pepper shakers, replacing ketchups, sweeping and vacuuming carpets, mopping tile surfaces, cleaning dishes, cleaning tables, restocking lids, cups, drink mixers, and sugar packets, rotating the beer cooler, cleaning dish area, organizing keg cooler, and carrying kegs to the cooler.

68. The willful refusal to pay wages for off-the-clock work constitutes a violation of the FLSA.

**COUNT I
VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
(Minimum Wage and Overtime, On Behalf of Themselves and the Class)**

69. Plaintiff re-alleges and incorporate the previous paragraphs of this Complaint as if fully set forth in this cause of action.

70. This cause of action arises from Defendants' violation of the FLSA for their failure to pay minimum wages and overtime pay to Plaintiff and similarly-situated Tip- Credit Employees.

71. Plaintiff brings this cause of action as a collective action under the FLSA, §216(b).

72. Plaintiff's consent forms to act as representative plaintiff is attached at Exhibit A.

73. Defendants were Plaintiff's "employer" as defined by the FLSA, 29 U.S.C. § 203(d).

74. During the entire course of Plaintiff's employment, Plaintiff was Defendants' "employee[s]" as defined by the FLSA, 29 U.S.C. § 203(e)(1).

75. During the entire course of their employment by Defendants, Plaintiff was not exempt from the minimum wage or overtime provisions of the FLSA.

76. In one or more individual workweeks during their employment, each Plaintiffs' average compensation (*i.e.* total weekly compensation divided by total weekly hours), excluding tips, fell below minimum wage.

77. Defendants are, individually and collectively, an "enterprise" as defined by the FLSA, § 203(r)(1).

78. Defendants are, individually and collectively, an enterprise(s) engaged in commerce or the production of goods for commerce within the meaning of the FLSA, § (203)(s)(1)(A).

79. Defendants' annual gross volume of sales made, or business done, has

exceeded $500,000 in each of the last three calendar years.

80. Defendants' restaurants, including those operating under the Defendant corporate entities, are engaged in related activities performed for a common business purpose, through unified operation or common control, including through use of common management employees, payroll, human resource and public relations functions, and personnel policies and practices that are alleged herein to violate the FLSA.

81. Defendants violated the FLSA by requiring Plaintiff and similarly-situated Tip-Credit Employees to perform non-tipped work that is *unrelated* to their tipped occupation, while paying them less than minimum wage, such as: cleaning bathrooms, sweeping, mopping, or scrubbing floors, cooking and preparing food, washing dishes, and cleaning the restaurant.

82. When Plaintiff's and other bartenders tips were not sufficient to meet minimum wage, Defendants fabricated tip pay in order to make it appear that Plaintiff and other bartenders were being paid the minimum wage.

83. Defendants also violated the FLSA by requiring Plaintiff and similarly-situated Tip-Credit Employees to perform non-tipped work that, even if *related* to their tipped occupation, exceeded twenty percent of their time worked in one or more individual workweeks without paying them full minimum wage.

84. Defendants violated the FLSA by requiring Plaintiff to reimburse the restaurant from her tips for customer walkouts and cash drawer shortages while paying her and other bartenders sub-minimum, tip-credit wages.

85. Defendants violated the FLSA by taking a tip credit against the minimum wages of Plaintiff and similarly-situated Tip-Credit Employees without informing them of the tip credit provisions of the FLSA.

86. Defendants violated the FLSA by not paying overtime pursuant to the FLSA.

87. Defendants' violations of the FLSA were willful.

## COUNT II
### VIOLATION OF THE FAIR LABOR STANDARDS ACT - UNPAID WAGES
**(On Behalf of Themselves and the Class)**

88. Plaintiff re-alleges and incorporate the previous paragraphs of this Complaint as if fully set forth in this cause of action.

89. At all relevant times, Defendants had a uniform policy and practice of knowingly permitting Plaintiffs and Class Members to work off the clock without compensation.

90. Defendants violated the FLSA by requiring Plaintiffs to work off the clock without compensation resulting in them not being paid minimum wages for all time worked in individual work weeks and overtime pay.

91. Defendants' violations of the FLSA were willful.

## COUNT III
### VIOLATION OF ARTICLE II, §34A OF THE OHIO CONSTITUTION AND THE OHIO MFWSA - On Behalf of Themselves and the Ohio Class)

92. Plaintiff re-alleges and incorporates the previous paragraphs of this Complaint as if fully set forth in this cause of action.

93. As alleged above, Plaintiff and members of the Ohio Class were consistently and uniformly not paid the minimum wage or overtime pay for all the work they performed during the course of their employment with Defendants. Defendants' policy and practice was to force Ohio Plaintiffs and members of the Ohio Class to work off the clock to cut costs and increase profits. Defendants' unlawful conduct was neither inadvertent, nor *de minimis*, but widespread, repeated and part of a pattern and practice of conduct affecting Plaintiff and all members of the

Ohio Class.

94. Defendants permitted, consented, and had actual or constructive knowledge the Plaintiff and members of the Ohio Class were performing non-tip-producing work for an incorrect and illegally low sub-minimum hourly rate of pay.

95. As a result of the foregoing, Plaintiff and the members of the Ohio Class have been damaged in an amount to be determined at trial. The Ohio Constitution contains a three- year statute of limitations regardless of whether the violation was willful (the "Ohio Class Period"). Therefore, the Ohio Plaintiff and members of the Ohio Class are entitled to treble damages and attorneys' fees and costs and other relief, including penalties and interest, as this Court deems just and appropriate.

## Prayer for Relief

WHEREFORE, Plaintiff, on behalf of herself and similarly-situated Tip-Credit Employees, pray for judgment against Defendants as follows:

A. For an order certifying that the First Two Claims for Relief of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

B. For an order certifying that the Third Claim for Relief be maintained as a class action pursuant to Rule 23 on behalf of the members of the Ohio Class who were either employed or who performed work in the State of Ohio during the Ohio Class Period and that notice of the pendency of this action be provided to members of the Ohio Class.

C. Designation of Plaintiff as the Class Representatives for the FLSA Class;

D. Designation of the Plaintiff as the Class Representatives for the Ohio Class;

E. Designation of Plaintiff's attorney as Class Counsel for both the FLSA Class and the Ohio Class;

F. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

G. Appropriate equitable relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

H. For an award of unpaid Federal minimum wages for each hour worked as required by the FLSA, 29 U.S.C. §206;

I. All unpaid overtime as calculated by the applicable provision of the FLSA, 29 U.S.C. §§ 201 et seq., and applicable regulations promulgated in the Code of Federal Regulations and/or opinions and directives of the Department of Labor;

J. All appropriate state and federal statutory penalties;

K. An award of compensatory damages to the extent available, liquidated damages pursuant to the FLSA and the Ohio Constitution, and restitution to be paid by Defendants according to proof;

L. Unpaid overtime premium compensation as provided by federal and Ohio law for overtime hours worked;

M. Pre-Judgment and Post-Judgment interest, as provided by law;

N. Attorneys' fees and costs of suit, including expert fees and fees pursuant to Ohio law and as permitted by the FLSA;

O. Judgment in the amount of the owed minimum wages for all time worked by

      Plaintiff and similarly-situated Tip-Credit Employees;

P.    Liquidated damages in an amount equal to the amount of unpaid minimum wages for the FLSA class and equal to twice the amount for the Ohio Class;

Q.    Such other and further relief as this Court deems just and proper.

      Respectfully submitted,

      s/Michael L. Fradin
      LAW OFFICE OF MICHAEL L. FRADIN
      Michael L. Fradin, Esq.
      mike@fradinlaw.com
      8401 Crawford Ave. Ste. 104
      Skokie, IL 60076
      Telephone: 847-986-5889
      Facsimile: 847-673-1228